OPINION
Melissa Wood appeals a judgment of the Montgomery County District Court convicting and sentencing her for attempted theft in violation of R.C.2913.02.
A complaint for attempted theft was filed against Wood in August, 1999. Wood entered a plea of no contest, but later filed a motion to withdraw the plea. Following a bench trial, Wood was convicted as charged. She was sentenced to one year of supervised probation and a $200 fine. Wood now appeals her conviction and sentence, asserting one assignment of error for our review.
 THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE WEIGHT EVIDENCE [SIC].
We begin by noting that in a weight of the evidence challenge, an appellate court:
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotation omitted.
While Thompkins explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We have explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported.
Mindful of these principles, we turn to the merits of Wood's assignment of error. Wood was convicted of attempted theft. Theft is defined in R.C. 2913.02 which reads as follows:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
(B)(1) Whoever violates this section is guilty of theft.
R.C. 2923.02, the statute defining attempt, provides in pertinent part as follows:
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct, that if successful, would constitute or result in the offense.
In this case, the State presented the testimony of two employees of Best Buy. One witness, Danny Clark, was a sales manager at Best Buy at the time of the incident. He testified that Wood had purchased two DVD (digital video disc) movies and three C.D. (compact disc) video games from Best Buy. The two movies and the video games came from different manufacturers. Clark testified that, the following day, Wood attempted to return all five items to the same store for a refund. Clark's testimony indicates that when Wood tried to return the items, an employee noticed that the plastic shrink wrap on the packages was "different" from that which "usually comes from the manufacturer". He testified that it felt different, and that it was sealed differently. He also testified that the labels on the three video games were in the wrong place. Upon inspection, it was discovered that the two movie packages were filled with paper, while the video game packages contained music CDs. Clark testified that in his five years of experience as a sales manager, he has never seen an incident in which a package did not have the proper contents. The other employee, Louis Ortiz, a Loss Prevention Officer at Best Buy, corroborated the testimony provided by Clark.
Wood also testified at trial. She testified that she bought the movies and games from Best Buy, and that they were in her possession until the time of the return. She testified that her husband became upset when he found out that she had bought the items, and that since they "did not have the money to spend", she decided to return the items. Wood testified that upon being informed that the merchandise was missing from the packages and that she would not get a refund, she requested the employees to call the police. She further testified that she did not have access to a shrink wrapping machine and that such a device costs approximately $1000.
Wood's argument essentially centers on her claim that her testimony was more credible than that of Ortiz and Clark, and that the State failed to show that she tampered with the packages. In support, she contends that it would be "illogical for [her] to purchase a shrink-wrap machine with a cost in excess of a thousand dollars in an attempt to return merchandise that is valued at a mere ninety dollars." She further contends that "it would be unlikely that a Defendant-Appellant that truly stole merchandise, would insist on the police to report to Best Buys [sic] to investigate Best Buy's refusal to return her money."
It is clear from the conviction that the trial court believed the complaining witnesses' versions of the facts rather than Wood's. The trial court had the opportunity to observe the witnesses and their demeanor on the stand. This court finds ample evidence in the record to support the trial court's determination that the testimony of the State's witnesses was credible. Specifically, Wood purchased five different items from five different manufacturers, which she attempted to return for a refund. All five items were returned with shrink wrap that differed from that of the manufacturers, and three items had labels in the wrong place. After reviewing the record, weighing the evidence and considering the credibility of the witnesses, it is clear that the trial court's finding of guilty on the charge of attempted theft was not against the manifest weight of the evidence.
Wood's sole assignment of error is overruled, and the judgment of the trial court is affirmed. _____________________ FREDERICK N. YOUNG, J.
FAIN, J. and GRADY, J., concur.